COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 
2-02-272-CR
 
KEVIN WAYNE ROSE                                                             APPELLANT 
 
V.
 
THE STATE OF TEXAS                                                                  STATE 
 
------------
 
FROM 
COUNTY CRIMINAL COURT NO. 7 OF TARRANT COUNTY 
 
------------
 
OPINION
 
------------
        A jury convicted Appellant Kevin Wayne Rose of driving while intoxicated,
and the trial judge assessed punishment at 120 days in jail, probated for two
years, and a fine of $500. Appellant brings a single point on appeal challenging
the trial court’s admission of a hearsay statement made by a non-testifying
passenger. Because the trial court reversibly erred in admitting the complained
of statement, we reverse the trial court’s judgment and remand this case for a
new trial.
 
I. Factual Background
A. The Driver—Appellant
        City of Watauga Police Officer Steven Wallace pulled Appellant over for
traveling thirty-five miles per hour in a thirty-mile-per-hour zone and for failing
to observe two stop signs. Wallace testified that when Appellant exited his car,
he staggered and swayed. He also claimed that Appellant had a strong odor of
alcohol on his breath and that his eyes were watery, dilated, and bloodshot. 
When asked if he had been drinking, Appellant responded, “Not that much.” 
At trial, Appellant testified that he had had two beers.
        Wallace testified that at the scene, Appellant performed and failed the
walk-and-turn and one-legged-stand field sobriety tests. Officer Sam Nance,
who had arrived as back-up, testified that he also observed Appellant do the
walk-and-turn portion of the field sobriety tests from a distance, but that he
could not determine whether Appellant was intoxicated. Wallace, who arrested
Appellant after he completed the field sobriety tests, testified that Nance had
nothing to do with Appellant’s case. The only alcohol found in the car was an
open beer can that both officers testified belonged to the passenger, Allen
Huddleston.
        At the police station, Appellant refused to provide a sample of his breath
and again performed the walk-and-turn and one-legged-stand tests on
videotape, which was later played to the jury. Wallace admitted that Appellant
performed fairly well, but he insisted that Appellant had not performed so well
in the field and that he was justified in jailing Appellant for driving while
intoxicated. Appellant claimed that he made no mistakes on the tests taken at
the police station.
B. The Passenger—Huddleston
        Officer Nance testified that at the scene, he opened the car’s front
passenger door and told the passenger, Huddleston, to get out of the car for
officer safety. Huddleston had a beer can in his hand, smelled of alcohol, and
stumbled a little. Nance claimed that Huddleston 
just started uttering words. We have been drinking all night at the
driver’s house and could his wife come and get us. . . . He said
they’d been drinking all night and that they were over at the
driver’s house, and they were out driving around, test driving the
new car, and if we could just call the driver’s wife to come pick
them up.

        Nance further testified that Huddleston said they had been drinking beer
all night at Appellant’s house. Wallace, not Nance, instructed Huddleston to
perform field sobriety tests, which he failed. Huddleston was then arrested for
public intoxication.
        Nance admitted that he did not write a report or take any notes
concerning Appellant’s case. He “didn’t write one scrap of paper about
[Huddleston’s admission] in [the] report.” He also testified that he had no
memory of telling Officer Wallace about the statements he claimed Huddleston
made to him, and he did not think that he did tell Wallace. Wallace, who
testified before Nance, also claimed that Huddleston had an open beer can in
his lap, but Wallace was not questioned about whether Nance had reported
Huddleston’s alleged admission to him. Nance claimed that the incident had
occurred two years earlier, and he “didn’t remember that comment that that
man made until I heard him [Huddleston] on the tape today . . . . When I heard
it on the tape.”
        Not only did Nance neglect to record the statement, take notes about the
statement, or mention the statement to the officer in charge of the case, he did
not reveal the existence of the statement to the prosecutors until the morning
he testified. Consequently, Appellant’s lawyer did not learn of the purported
statement until that time, even though he had specifically requested all
statements pretrial.
        Huddleston was not present at trial. Instead of calling him as a witness,
the State offered the out-of-court statement Nance claimed Huddleston made
to him two years earlier. Appellant does not challenge either the legal or factual
sufficiency of the evidence. Instead, his sole challenge focuses on the
admission of the out-of-court statement.
II. Statement against interest
        Appellant claims that the admission of the statement violated his right of
confrontation guaranteed by the Sixth Amendment to the United States
Constitution. He further claims that the hearsay statement does not qualify as
a statement against interest under Texas Rule of Evidence 803(24). Finally, he
claims the admission of the statement harmed him.
        In all criminal prosecutions, the accused has a right “to be confronted
with the witnesses against him.”


 “The central concern of the Confrontation
Clause is to ensure the reliability of the evidence against a criminal defendant
by subjecting it to rigorous testing in the context of an adversary proceeding
before the trier of fact.”


 Generally, abrogation of a criminal defendant’s right
to cross-examine witnesses is a denial of due process of law under the
Fourteenth Amendment.



        Hearsay is “a statement, other than one made by the declarant while
testifying at the trial or hearing, offered in evidence to prove the truth of the
matter asserted.”


 The admission of hearsay evidence against a criminal
defendant implicates the Confrontation Clause of the Sixth Amendment because
the defendant is not afforded the opportunity to confront the out-of-court
declarant. To avoid a violation of the Confrontation Clause, hearsay evidence
must fall within a firmly rooted hearsay exception or must contain particularized
guarantees of trustworthiness such that cross examination would probably add
little, if anything, to the reliability of the evidence.



        The United States Supreme Court has held that confessions of another
person that incriminate the defendant on trial, even though self-inculpatory to
the declarant, are presumptively unreliable and “fall[] outside the realm of”
firmly rooted hearsay exceptions.


 The right of confrontation is a fundamental
guarantee and a cornerstone of due process of law. This valuable right will not
be dispensed with unless the circumstances of the hearsay evidence are such
that confrontation and cross examination of the declarant would do nothing to
undermine the reliability of the evidence.


 This is a grave burden for the State.         Huddleston’s statement concerning his and Appellant’s drinking all night
was inadmissible hearsay unless it satisfied a hearsay exception.


 The State
offered Nance’s testimony regarding Huddleston’s statement as a declaration
against interest under rule 803(24) of the Texas Rules of Evidence.


 That rule
provides that in a criminal case, a “[a] statement which . . . so far tended to
subject the declarant to civil or criminal liability . . . that a reasonable person in
declarant’s position would not have made the statement unless believing it to
be true” will not be excluded from evidence under the hearsay rule as long as
“corroborating circumstances clearly indicate the trustworthiness of the
statement.”


 An appellate court reviews the trial court’s decision to admit
evidence of a statement against interest under an abuse of discretion standard
of review.


 A trial court’s ruling will not be reversed as long as it is within the
zone of reasonable disagreement.



        The Court of Criminal Appeals has set forth a two-part test regarding the
admissibility of statements against interest.


 First, the statement must expose
the declarant to criminal liability.


 Second, corroborating circumstances must
clearly indicate the trustworthiness of the statement.


 The Court of Criminal
Appeals has further set forth factors that may be considered when verifying the
trustworthiness “to avoid the admissibility of a fabrication.”


 Those factors
include: whether the guilt of the declarant is inconsistent with the guilt of the
accused; whether the declarant was so situated that he might have committed
the crime; the timing of the declaration and its spontaneity; the relationship
between the declarant and the party to whom the declaration was made; and
the existence of independent, corroborative facts.



        Huddleston’s statement sufficiently tended to expose him to criminal
liability to satisfy the first prong of the test for admissibility of statements
against interest. A person commits the offense of public intoxication if he
appears in a public place while intoxicated to the degree that he could endanger
himself or another.


 Case law has established that the interior of a vehicle on
a public street or road can be a public place.



        Appellant relies on Guidry v. State for the proposition that Huddleston’s
statement was inadmissible because it did not inculpate Huddleston to the same
degree that it inculpated Appellant.


 The State argues that Guidry is
inapplicable because neither party argues that Huddleston was Appellant’s
accomplice or co-defendant, and Huddleston was arrested for public
intoxication, not as a party to driving while intoxicated. Second, the State
argues, Huddleston’s statement could not be seen as an attempt to shift blame
for the offense of driving while intoxicated from himself to Appellant and was
not an attempt to exculpate himself in any way.
        From our perspective, Guidry concerns not the first prong of the test,
exposure to criminal liability, which we do not see as an issue in this case, but
the second prong, the reliability and trustworthiness of the statement.


 The
appellant’s complaint in Guidry, which involves co-defendants, was that a
number of Prystash's statements to Gipp incriminated Guidry as well as
Prystash. Guidry argued that to qualify as a statement against interest under
rule 803(24), the statement must be against the declarant's interest. Thus, he
maintained, the portions of Prystash's statements that implicated Guidry were
not admissible as statements against Prystash's interest. The Court of Criminal
Appeals agreed, and stated,
We have recognized that Rule 803(24) “provides for an
exception to the hearsay rule for a statement against the
declarant's interest [, but] . . . does not provide a hearsay rule
exception for a declarant's statement which is against someone
else's interest, e.g. a third-party, a co-actor, or a co-defendant.”
Cofield v. State, 891 S.W.2d 952, 955 (Tex. Crim. App.1994).
That is, unless the statement against the third party's interest is
also sufficiently against the declarant's interest as to be reliable.
For example, in Dewberry v. State, 4 S.W.3d 735, 744-45 (Tex.
Crim. App. 1999), statements in which the declarant (“Chris”)
incriminated both himself and the defendant, jointly, were held
sufficiently reliable:
 
The State was careful to elicit accounts only of
statements made by Chris referring to “we,” which
included both him and appellant. An admission against
a co-defendant declarant's interest can be admissible
against the defendant so long as it is sufficiently
against the declarant's interest to be reliable. [citation
omitted] Because Chris's statements containing “we”
implicated him in the capital murder of Rode, this Court
concludes that his statements were sufficiently
self-inculpatory to be reliable[.]
 
The statements made by Prystash in the instant case are not
so equally against both Prystash's and appellant's interests as
reach this level of reliability. While some of Prystash's statements
refer to “we,” meaning both himself and appellant, on the critical
issue of who killed the victim, Prystash's statements inculpate
appellant alone as the triggerman and describe with specificity how
“appellant” killed the victim. Prystash told Gipp he just dropped
appellant off at the victim's residence and picked him up after
appellant had committed the murder. Granted both driver and
triggerman bear potentially equal criminal liability, but the driver
might be in a better bargaining position should he decide to
cooperate with the State, and the driver might have a better
chance at gaining sympathy from the jury. Because Prystash's
statements so clearly delineate his and appellant's roles on the
critical issue of who killed the victim, we hold the statements made
by Prystash which were against appellant's interest were not
admissible under Rule 803(24).
 
Thus, Gipp's testimony in which she described Prystash's
statements against his own interest was admissible under the Rules
of Evidence, while the testimony relating Prystash's statements
against appellant's interest was not admissible under the Rules.


 
        The question, then, is whether Huddleston’s statement, as reported by
Nance, that “they” had been drinking all night at Appellant’s house was
sufficiently reliable to satisfy the second prong of the test for admitting
statements against interest.


 The facts of the case now before this court are
similar to those in Cofield v. State.


 In Cofield, the Court of Criminal Appeals
held that the hearsay exception for statements against penal interest did not
apply to permit the use against the defendant of a statement by the passenger
to the arresting officer that both the passenger and the defendant had smoked
cocaine immediately before their arrest. Although the statement exposed both
passenger and defendant to criminal liability, the statement might have been
made to curry favor with the police, and the passenger's guilt may have been
inconsistent with the guilt of defendant.



        Rule 803(24) requires sufficient corroborating circumstances to indicate
the trustworthiness of the statement at issue.


 While the State argues that the
independent evidence of intoxication provided the necessary corroboration,



we do not agree. We hold that Huddleston’s guilt could be inconsistent with
Appellant’s, that Huddleston could have been attempting to curry favor with the
police, and that the independent evidence does not corroborate Appellant’s
guilt.



        We have carefully and repeatedly viewed the videotapes of Appellant’s
arrest, field sobriety tests, and tests conducted at the police department. There
is no evidence of the staggering and swaying that Officer Wallace claimed
occurred when Appellant exited his car. Nor does the videotape contain any
audible statement regarding drinking all night that Officer Nance claimed he
heard on the videotape that reminded him of Huddleston’s purported statement
against interest. Although Huddleston appears and speaks on the videotape,
no such statement that Nance reported at trial can be heard on the tape. We
are mindful that the Court of Criminal Appeals in Bingham stated that “evidence
which undermines the reliability of the statement as well as evidence
corroborating its trustworthiness may be considered, so long as the Court is
careful not to engage in a weighing of the credibility of the witness.”


 We
specifically do not weigh the credibility of Officer Nance who claimed to hear
Huddleston’s statement on the video and suddenly remember, after two years,
a statement that he never mentioned or made note of. Rather, we limit
ourselves to determining whether the statement is sufficiently corroborated to
be trustworthy.



        We note that if both Huddleston and Appellant had been drinking all night,
presumably Appellant would have been substantially more intoxicated than the
videotapes reveal. Yet Appellant’s degree of intoxication, if any, was so slight
that even Wallace admitted that Appellant showed little or no signs of
intoxication while performing the field sobriety tests at the police station. 
Officer Wallace claimed that he smelled beer on Appellant and that Appellant’s
eyes were dilated, watery, and bloodshot. This condition was not visible to us
in examining the tape. Appellant testified that he had had two beers that
evening.
        Officer Nance testified that Huddleston was holding a can of beer when
he asked him to get out of the car. Nance also testified that Huddleston said
that “they” had been drinking all night. Nance’s testimony implied that “they”
were Huddleston and Appellant, but other testimony in the case revealed that
both men and their wives had been at a party that night. Huddleston clearly
failed the field sobriety tests.
        Nance claimed that Huddleston admitted that “they” had been drinking
all night in the context of asking to be allowed to go home. It is not clear that
Huddleston understood that he could be arrested for public intoxication. It is
clear, based on Nance’s testimony, that Huddleston was trying to convince him
to let him call one of the wives to pick him up. That is, Nance’s testimony
makes clear that Huddleston was asking Officer Nance for consideration—a
favor.



        Weighing all the evidence, and applying the appropriate tests, we hold
that the State failed to sustain its burden as to the reliability prong of the test
for admissibility of a statement against interest. The statement lacks the indicia
of reliability to support admissibility; therefore, its admission before the jury
was an abuse of discretion. Further, the trial court’s admission of this hearsay
statement into evidence when it lacked all safeguards of trustworthiness
violated Appellant’s right to confront the witness against him, in violation of the
guarantees of the Sixth Amendment to the Constitution of the United States.



III. Harm Analysis
        Having found error, we must conduct a harm analysis to determine
whether the error calls for reversal of the judgment.


 Because we determine
that the error is constitutional, we apply rule 44.2(a) and reverse unless we
determine beyond a reasonable doubt that the error did not contribute to
Appellant’s conviction or punishment.


 The question is whether the trial
court’s error in admitting the statement that Nance reported Huddleston made
to him was harmless beyond a reasonable doubt.


 In applying the “harmless
error” test, our primary question is what effect the error had, or reasonably may
have had, on the jury’s decision.



        Our harmless error analysis must focus upon the error rather than the
propriety of the outcome of the trial, trace its probable impact upon the jury,
and determine whether it contributed to the conviction or punishment.


 We
consider the source and nature of the error, the extent that it was emphasized
by the State, its probable collateral implications, the weight a juror would
probably place on the error, and whether declaring it harmless would be likely
to encourage the State to repeat it with impunity.


 This requires us to evaluate
the entire record in a neutral, impartial, and even-handed manner, not in the
light most favorable to the prosecution.



        Officer Nance testified at length about the statement that he claims
Huddleston made to him. The prosecutors referred to the statement at least
three times and emphasized it in their closing argument. Finally, even though
the presence of overwhelming evidence supporting the finding in question can
be a factor in the evaluation of harmless error,


 in the case before us, the other
evidence supporting Appellant’s guilt was not overwhelming. Consequently,
after carefully reviewing the record and performing the required harm analysis
under rule 44.2(a), we are unable to determine beyond a reasonable doubt that
the error did not contribute to Appellant’s conviction.


IV. Conclusion
        Because we cannot conclude beyond a reasonable doubt that this error
had no effect on Appellant’s conviction,


 we sustain Appellant’s point on
appeal, reverse the trial court’s judgment, and remand the case for a new trial.
 
 
                                                                  LEE ANN DAUPHINOT
                                                                  JUSTICE
 
PANEL B:   DAUPHINOT, GARDNER, and WALKER, JJ.
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
DELIVERED: November 20, 2003